UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MISSION PHARMACAL COMPANY;

  *Plaintiff/Counter-Defendant*,

v.                                                                                          Case No.  SA-20-CV-01454-JKP

MOLECULAR BIOLOGICALS, INC.;

  *Defendant/Counter-Plaintiff*.

# O R D E R

Before the Court is Plaintiff/Counter-Defendant Mission Pharmacal Company's Motion for Finance Charges, Attorney's Fees and Costs, and Interest, and Molecular Biologicals, Inc.'s Response. *See* ECF Nos. 107, 108. For the reasons discussed herein, the motion is **GRANTED IN PART**. In addition to the principal amount of $60,508.00 awarded on its breach of contract claim, the Court awards Mission $160,079.35 in attorney's fees, $6,946.90 in costs, $16,369.47 in pre-judgment interest, and 4.58% in post-judgment interest, to be calculated on the total judgment award, running from April 4, 2023 through the date Molecular satisfies such award.

## BACKGROUND

This case arises from a contract dispute between two pharmaceutical companies. Mission sued Molecular, seeking reimbursement for about $1.7 million in returned goods and $60,508.00 in unpaid service fees. Molecular brought a countersuit against Mission, arguing Mission failed to perform under the parties' contract and improperly destroyed and quarantined Molecular's returned goods. Following a bench trial, the Court found that because the parties' contract does not say who pays for returns, and Molecular derived no benefit from Mission's acceptance of

returns, Molecular is not liable for the returns. Because Mission did not recover on its reimbursement claim, the Court found Molecular has no damages and therefore takes nothing from its counterclaims.

The Court separately found Molecular is liable to Mission for $60,508.00 in unpaid service fees, plus attorney fees and interest, and directed the parties to file briefings on the appropriate amount Mission should recover for attorney's fees and interest. *See* ECF No. 103. The parties filed their briefings and, based on the Court's review of the briefings and applicable law, this order establishes Mission's total recovery.

## LEGAL STANDARD

In diversity actions, state law controls the award of attorney's fees. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Generally, under Texas law, attorney's fees and litigation expenses may not be recovered absent statutory or contractual authorization. *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs. Inc.*, 612 F.3d 800, 807 (5th Cir. 2010) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006)). In this case, the parties' contract allows for collection of attorney's fees and costs. *See* ECF No. 103 at 15 (quoting the parties' contract, which entitles Mission to "all costs of collection, including reasonable attorneys' fees.").

The Fifth Circuit uses a two-step process called the lodestar method to calculate attorney's fees to be awarded. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Using this method, the court must first calculate the lodestar amount of an attorney-fee award. Second, the Court may adjust the lodestar amount upward or downward based upon analysis of specified factors. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995).

In the first step, the court calculates the lodestar by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). Therefore, to calculate the lodestar, the Court first determines the reasonable number of hours that should have been expended on the litigation and then the reasonable hourly rates for the participating attorneys. *Id*. A plaintiff seeking recovery of attorney's fees holds the burden of showing the reasonableness of the hours billed and the attorney's exercised billing judgment. *Id*. Billing judgment requires documentation of both the hours charged and the hours written off as unproductive, excessive, or redundant. *Id*.

In a case such as this where a party prevails on part of its claim, Texas law requires the prevailing party to "segregate" fees related solely to its unrecoverable claim. *See ATOM Instrument Corp. v. Petroleum Analyzer Co., L.P.*, 969 F.3d 210, 217 (5th Cir. 2020), *as revised* (Sept. 17, 2020) (citing *Tony Gullo Motors*, 212 S.W.3d at 313). However, "where discrete legal services advance both a recoverable and unrecoverable claim," such fees are considered "so intertwined that they need not be segregated." *Id*. (citing *Tony Gullo Motors*, 212 S.W.3d at 313–14). A party may satisfy its burden to segregate fees by submitting testimony from the party's attorney identifying the percentage of hours expended on the unrecoverable claim. *Id*.

There is a strong presumption of the reasonableness of the lodestar amount once the Court determines the reasonable hours that should have been spent and the reasonable hourly rates. *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan*, 448 F.3d at 800; *Black v. SettlePou, P.C.*, 732 F.3d at 502. In the Fifth Circuit, "the most critical factor in determining whether the lodestar amount should be adjusted is the degree of success obtained." *Saizan*, 448 F.3d at 799. However, "[w]hile a low damages award is one factor which the court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award." *Saizan*, 448

F.3d at 799. Accordingly, while a court must take the degree of success obtained into account, it would be an abuse of discretion for the district court to reduce a lodestar calculation based solely on the amount of damages obtained. *Black v. SettlePou, P.C.*, 732 F.3d at 503.

In its discretion, a court may decrease or enhance the lodestar amount based on twelve factors set forth in *Johnson v. Ga. Highway Express, Inc*. (overruled on other grounds by *Blanchard v. Bergeron*, 48 U.S. 87, 90 (1989)). *See also Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995). The *Johnson* factors are: (1) the time and labor required to represent the clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d. 714, 717–19 (5th Cir. 1974). If a *Johnson* factor was taken into account when calculating the lodestar, the lodestar may not be adjusted again based on this factor. *Saizan*, 448 F.3d at 800.

While the analysis set forth above, particularly the interplay of the lodestar analysis and the *Johnson* factors, may have been called into question by the United States Supreme Court's decision in *Perdue v. Kenny A.*, 559 U.S. 542 (2010), the Fifth Circuit continues to use the approach. *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 393 (5th Cir. 2016); *see Perdue*, 559 U.S. at 552–53; *see also Black v. SettlePou, P.C.*, 732 F.3d at 502–03. A Court should explain with a reasonable degree of specificity the findings and reasons upon which the award is based,

which includes an indication of how the *Johnson* factors were applied. *Portillo v. Cunningham*, 872 F.3d 728, 741 (5th Cir. 2017) (quoting *Combs*, 829 F.3d at 391).

## ANALYSIS

The majority of Mission's work in this case was spent attempting to recover on its $1.7 million breach of contract claim for reimbursement for returned goods. Because it only recovers on its smaller, $60,508.00 claim for unpaid service fees, Texas law requires Mission to segregate its recoverable attorney's fees from its unrecoverable fees. Recognizing this, Mission segregated its hourly attorney work into three categories: (1) attorney work on its recoverable claim for unpaid service fees, (2) attorney work on its unrecoverable claim for reimbursement for returns, and (3) intertwined attorney work spent on both claims. To calculate the lodestar, the Court assesses the reasonableness of the hours Mission's attorneys spent on its recoverable claim for unpaid service fees and intertwined work on its recoverable and unrecoverable claims. *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d at 799.

### I.   Attorney's Fees

For the purposes of the lodestar analysis, the Court finds credible—and Molecular does not dispute—Mission's contention that the hourly rates charged in this matter were commensurate with the experience and skill level of the attorneys involved and in accordance with the ordinary and customary rates for similar services in the federal courts of Texas. *See* ECF No. 107-2.

For the first category of Mission's hourly attorney work—that is, attorney work on its recoverable claim for unpaid service fees—Mission seeks $145,845.50 in attorney's fees.[1] Molecular argues Mission's hours for unpaid service fees should be reduced for three types of

---

[1] Molecular contends, and the Court has confirmed, that Mission's request for $148,845.50 in attorney's fees in this category is erroneous. Billing entries on Mission's spreadsheet add up to $145,845.50. *See* ECF No. 107-1 at 85-103.

work: (1) work related to removal to federal court, (2) work related to Molecular's counterclaims, and (3) work related to responding to Molecular's summary judgment motion. Molecular argues that, if Mission had litigated its unpaid service fees claim only, it would not have incurred costs related to removal because its damages would not have met the amount-in-controversy threshold for diversity jurisdiction. However, because Molecular was the removing party, the Court will not penalize Mission for litigating in federal court. The Court, therefore, declines to reduce Mission's fees for work related to removal.

With respect to Mission's hourly attorney work spent on Molecular's counterclaims and responding to Molecular's motion for summary judgment, the Court agrees that Mission's hours should be reduced. The parties stipulated that Molecular's counterclaims were defenses, or an offset, to Mission's reimbursement claim. That's why Molecular did not recover on its counterclaims when Mission did not recover on its reimbursement claim. The Court, therefore, reduces Mission's hourly work related to Molecular's counterclaims by 18.9 hours, or $7,699.40.[2] Likewise, the Court reduces Mission's hourly work on its response to Molecular's motion for summary judgment, which dealt only with the reimbursement claim. *See* ECF No. 48. For this work the Court reduces Mission's hours by 35.8 hours, or $13,832.00.[3] The Court, therefore, awards Mission $124,314.10 in attorney's fees ($145,845.50 - $7,699.40 - $13,832.00) for work related solely to its unpaid service fees claim.

For intertwined attorney work, Mission reports 729.5 billable hours, or $357,652.50. Recognizing the majority of its work in this category was related to its unrecoverable claim, Mission suggests reducing its hours by 80% to $71,530.50. Molecular argues this reduction is

---

[2] *See* ECF No. 107-1 at 87-90, 103 (billing entries with work dates of 1/25/21-1/26/21, 2/5/21, 2/9/21-2/12/21, 2/17/21-2/18/21, 2/24/21, 2/26/21, 3/18/21, 11/1/22, and 2/15/23).
[3] *See id.* at 101-03 (billing entries with work dates of 11/24/21, 11/29/21-12/3/21, 12/10/21, 12/17/21, 12/19/21-12/22/21, 12/29/21, and 1/10/22).

6

insufficient because even the reduced amount is excessive for a relatively straightforward breach of contract claim. Molecular urges the Court to reduce Mission's overall fee award proportionate to the amounts sought and recovered, which in this case would be 3% of the amount sought. While the Court agrees Mission's unpaid service fees claim was relatively straightforward, the Court does not agree that Mission's fee award should be proportionate to its overall recovery. Mission's unpaid service fees claim made up a small percentage of its overall claim for damages; however, Mission successfully recovered the full amount it sought for unpaid service fees. Furthermore, because the parties did not settle the unpaid service fees claim, Mission incurred necessary expenses to litigate the claim through to trial. A low damages award is one factor which the court may consider in setting the amount of fees, but it is not the only factor. *See Saizan*, 448 F.3d at 799. Here, the Court recognizes that some of Mission's intertwined fees were necessary to recover on its claim for unpaid service fees.

The Court finds that a reasonable metric for calculating recoverable attorney's fees in Mission's intertwined category is an assessment of the actual work done. To that end, the Court looks to Mission's motion for summary judgment, of which approximately 10% (2 pages) was dedicated to its unpaid service fees claim. *See* ECF No. 34; *see also* ECF No. 108 at 7. The Court further notes that, according to Molecular's calculations, the two witnesses whose testimony dealt most directly with the unpaid service fees claim, Kevin Combs and Arturo Martinez, spent about 8.1% and 9.5%, respectively, talking about unpaid service fees in their deposition testimony. *See* ECF No. 108 at 7. The Court, therefore, finds that Mission can reasonably recover 10% of its intertwined attorney's fees, or $35,765.25 (10% of $357,652.50).

Based on its assessment of Mission's billable hours for its recoverable claim and intertwined attorney work, the Court calculates the lodestar amount to be $160,079.35

($124,314.10 + $35,765.25). Because the Court already accounted for Mission's relatively low recovery in calculating the lodestar, the Court will not adjust the lodestar again based on this factor. *See Saizan*, 448 F.3d at 800.

## II. Costs

Mission submits it is entitled to taxable costs pursuant to 28 U.S.C. § 1920. Molecular argues Mission should not be awarded costs because, since it only recovered on part of its breach of contract claim, it is not the "prevailing" party. The Court finds that because Mission prevailed on its breach of contract claim for unpaid service fees, it is entitled to taxable costs. Furthermore, the parties' contract entitles Mission to "all costs of collection, including reasonable attorneys' fees." *See* ECF No. 103 at 15 (quoting the parties' contract). The Court interprets "costs of collection" to include taxable costs pursuant to 28 U.S.C. § 1920.

Molecular argues in the alternative that, if the Court does award costs, Mission's claimed costs are excessive and should be reduced. Mission submits that it incurred a total of $10,612.03 in taxable fees, which consist of Clerk of the Court fees, service fees, and transcript fees necessarily obtained for use in the case. Molecular challenges Mission's inclusion of certain deposition and video deposition transcripts as unnecessary and ineligible costs.

The party seeking recovery of costs bears the "burden of justifying the necessity of obtaining the depositions . . . at issue." *Delgado v. Alamo Cmty. Coll. Dist.*, 2019 WL 1772317, at *1 (W.D. Tex. Apr. 23, 2019) (citing *Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991)). "[A] district court has great latitude in determining whether a deposition was 'necessarily obtained for use in the case' or was obtained merely for the convenience of the attorney." *Id*. (quoting *Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1362, 1363–64 (5th Cir. 1983). "'The consensus in the Western District of Texas is to allow the recovery of the costs of

8

videotaped depositions only where the video recordings are actually used at trial,' and not to allow the costs of both video and written transcripts." *Transverse, LLC v. Iowa Wireless Services, LLC*, 2020 WL 614590 at *6 (W.D. Tex. Feb. 7, 2020) (quoting *Delgado v. Alamo Cmty. Coll. Dist.*, 2019 WL 1772317, at *2 (W.D. Tex. Apr. 23, 2019) (collecting cases)).

In this case, the Court agrees with Molecular's contention that Mission's $1,270.13 cost of Armando Martinez's deposition is nontaxable because it was unnecessary. Unlike his brother, Armando Martinez was never involved in the day-to-day operations of Molecular, and Mission's cursory cross examination of him at trial demonstrates the insignificance of his testimony. The Court further agrees that Mission's $2,395.00 cost for Tom Oglesbee's videotaped deposition is an unnecessary, nontaxable expense given that the video deposition was not used at trial and a written deposition transcript was also available. The Court, therefore, reduces Mission's request for costs by $1,270.13 for Armando Martinez's deposition and $2,395.00 for Tom Oglesbee's video deposition, and awards Mission $6,946.90 in taxable costs ($10,612.03 - $1,270.13 - $2,395.00).

### III.     Pre- and Post-Judgment Interest

Molecular agrees that Mission correctly calculated the $16,369.47 in pre-judgment interest due on the $60,508.00 awarded, and that 4.58% is the appropriate rate for post-judgment interest, to be calculated on the total judgment award, running from April 4, 2023 through the date Molecular satisfies such award. The Court, therefore, awards the parties' agreed amounts in pre- and post-judgment interest.

### CONCLUSION

In conclusion, in addition to the principal amount of $60,508.00 awarded on its breach of contract claim, the Court awards Mission $160,079.35 in attorney's fees, $6,946.90 in costs,

$16,369.47 in pre-judgment interest, and 4.58% in post-judgment interest, to be calculated on the total judgment award, running from April 4, 2023 through the date Molecular satisfies such award.

It is so ORDERED.
SIGNED this 8th day of May, 2023.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE